# RECORD NO. 13-1689

In The

# United States Court of Appeals
### For The Eighth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee*

v.

BRUCE EDWARD HUMPHREY,

*Defendant/Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI

ADDENDUM TO BRIEF OF APPELLANT

Eric C. Bohnet
6617 Southern Cross Drive
Indianapolis, IN 46237
Ph: (317) 750-8503
*Counsel for Defendant-
Appellant*

1

AO 245B (Rev. 09/12)

Sheet 1 - Judgment in a Criminal Case

# United States District Court

## Eastern District of Missouri

UNITED STATES OF AMERICA

v

Bruce Edward Humphrey

JUDGMENT IN A CRIMINAL CASE

CASE NUMBER: 4:12CR00128-1 CEJ

USM Number: 39330-044

Andrew J. Sottile

Defendant's Attorney

THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☒ was found guilty on count(s)   one of a one-count Indictment on December 11, 2012
after a plea of not guilty

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2) | Felon in Possession of a Firearm | February 29, 2012 | One |

The defendant is sentenced as provided in pages 2 through __6__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

March 18, 2013

Date of Imposition of Judgment

*[signature]*

Signature of Judge

Carol E. Jackson

United States District Judge

Name & Title of Judge

March 18, 2013

Date signed

Record No.: 371

Appellate Case: 13-1689    Page: 2    Date Filed: 09/09/2013 Entry ID: 4073490

DEFENDANT: Bruce Edward Humphrey
CASE NUMBER: 4:12CR00128-1 CEJ
District: Eastern District of Missouri

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of ___92 Months___

☒ The court makes the following recommendations to the Bureau of Prisons:

It is recommended the defendant be assigned to a facility that is as close to St. Louis, Missouri, as possible, that he be allowed to participate in a drug abuse treatment program, and that he be allowed to participate in academic and vocational training programs.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

  ☐ at _____ a.m./p.m. on _____

  ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before 2 p.m. on _____

  ☐ as notified by the United States Marshal

  ☐ as notified by the Probation or Pretrial Services Office

# MARSHALS RETURN MADE ON SEPARATE PAGE

Judgment—Page ___3___ of ___6___

DEFENDANT: Bruce Edward Humphrey
CASE NUMBER: 4:12CR00128-1 CEJ
District: Eastern District of Missouri

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of   two years.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Judgment-Page  4  of  6

DEFENDANT:   Bruce Edward Humphrey
CASE NUMBER:  4:12CR00128-1 CEJ

District:   Eastern District of Missouri

## ADDITIONAL SUPERVISED RELEASE TERMS

While on supervision, the defendant shall comply with the standard conditions that have been adopted by this Court and shall comply with the following additional conditions. If it is determined there are costs associated with any services provided, the defendant shall pay those costs based on a co-payment fee established by the probation office.

The defendant shall refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of commencement of supervision and at least two periodic drug tests thereafter for use of a controlled substance.

The defendant shall participate in a substance abuse treatment program approved by the probation office, which may include substance abuse testing, counseling, Residential Re-entry Center placement, residential or inpatient treatment.

The defendant shall participate in a cognitive behavioral treatment program as directed by the probation office.

The defendant shall participate in a vocational services program, which may include job readiness training and skills development training, as directed by the probation office.

The defendant shall submit his person, residence, office, or vehicle to a search conducted by the probation office based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

AO 245B (Rev. 09/17)   Judgment in Criminal Case        Sheet 5 - Criminal Monetary Penalties

Judgment-Page  5  of  6

DEFENDANT:  Bruce Edward Humphrey
CASE NUMBER:  4:12CR00128-1 CEJ
District:  Eastern District of Missouri

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on sheet 6

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $100.00 | | |

☐ The determination of restitution is deferred until _____ . *An Amended Judgment in a Criminal Case* (AO 245C)
will be entered after such a determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below. However, pursuant ot 18 U.S.C. 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Totals: | | | |

☐ Restitution amount ordered pursuant to plea agreement _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ The interest requirement is waived for the.   ☐ fine      ☐ restitution.

☐ The interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B (Rev. 09/11) Judgment in Criminal Case — Sheet 6 – Schedule of Payments

Judgment-Page ___6___ of ___6___

DEFENDANT: Bruce Edward Humphrey
CASE NUMBER: 4:12CR00128-1 CEJ
District: Eastern District of Missouri

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A ☒ Lump sum payment of $100.00 _____ due immediately, balance due

     ☐ not later than _____ , or

     ☐ in accordance with ☐ C, ☐ D, or ☐ E below; or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ E below; or ☐ F below; or

C ☐ Payment in equal _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of _____ e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of _____ e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after Release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program are made to the clerk of the court.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several
     Defendant and Co-defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment; (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest (6) community restitution.(7) penalties, and (8) costs, including cost of prosecution and court costs.

Appellate Case: 13-1689    Page: 7    Date Filed: 09/09/2013 Entry ID: 4073490



DEFENDANT: Bruce Edward Humphrey
CASE NUMBER: 4:12CR00128-1 CEJ
USM Number: 39330-044

# UNITED STATES MARSHAL
## RETURN OF JUDGMENT IN A CRIMINAL CASE

I have executed this judgment as follows:

_____

_____

The Defendant was delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By   _____
Deputy U.S. Marshal

☐   The Defendant was released on _____ to_____ Probation

☐   The Defendant was released on _____ to_____ Supervised Release

☐   and a Fine of_____ ☐ and Restitution in the amount of_____

_____
UNITED STATES MARSHAL

By   _____
Deputy U.S. Marshal

I certify and Return that on _____, I took custody of _____

at _____ and delivered same to _____

on _____ F.F.T. _____

U.S. MARSHAL E/MO

By DUSM _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12-CR-128 (CEJ) |
| | ) | |
| BRUCE EDWARD HUMPHREY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Pursuant to 28 U.S.C. § 636(b), the Court referred all pretrial matters in this case to United States Magistrate Judge Nannette A. Baker for determination and recommended disposition, where appropriate. On September 11, 2012, Judge Baker issued a Report and Recommendation, in which she recommended that the defendant's motion to suppress evidence and statements be denied. The defendant timely filed objections to the recommendation; the United States did not file a response to the objections.

As required by statute, the Court has conducted a *de novo* review of the proposed findings and recommendations of the magistrate judge as to which objections have been made. 28 U.S.C. §636(b)(1). Specifically, the Court has reviewed the parties' memoranda and the transcript of the suppression hearing conducted on July 17, 2012. The defendant does not dispute the factual findings of the magistrate judge. He does, however, challenge the magistrate judge's application of the law to the facts. For the reasons discussed below, the Court

concludes that the factual findings made by Judge Baker are supported by the evidence, and that her legal conclusions are correct.

\*\*\*\*\*

A brief seizure, or investigatory detention, by police is lawful if based on reasonable suspicion. Terry v. Ohio, 392 U.S. 1, 32-33 (1968). An investigatory detention is valid only when the police have a reasonable, articulable suspicion of criminal activity. Terry, 392 U.S. at 21 (police must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."); United States v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004)(to comply with the Fourth Amendment, police must be able to "articulate some minimal, objective justification for an investigatory stop."). The issue in this case is whether there was reasonable suspicion to justify an investigative detention of the defendant. In determining that issue, the Court "must evaluate the reasonableness of . . . [the] seizure in light of the particular circumstances." Terry, 392 U.S. at 21. See United States v. Garcia, 23 F.3d 1331, 1334 (8th Cir. 1994) ("Whether the particular facts known to the officer amount to an objective an particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances.")

The Court finds that the initial seizure of the defendant in the strip mall parking lot was based on reasonable suspicion of criminal activity. The evidence establishes that after the police officers attempted to discontinue their surveillance, the defendant became their pursuer. The defendant drove his car directly toward the officers' vehicle and stopped in its path as if to block it. Also, the defendant was

- 2 -

known to the officers as a convicted felon and as a suspect in a murder investigation. His behavior under these circumstances was such as to give rise to a reasonable concern for officer safety. Thus, the police were justified in seizing the defendant by blocking his vehicle and drawing their weapons. See United States v. Bell, 480 F.3d 860, 864 (8th Cir. 2007) (officers may take reasonable steps necessary to protect themselves during an investigative stop).

The evidence also establishes that the investigative stop did not ripen into an arrest until after the officer looked through the window of the defendant's car and saw the firearm in his lap. As noted above, the officers knew that the defendant was a convicted felon and, as such, he was prohibited from possessing a firearm. Thus, there was probable cause to seize the firearm and to arrest the defendant. See Beck v. Ohio, 379 U.S. 89, 91 (1964)(warrantless arrest is constitutional if "at the moment the arrest was made, the officers had probable cause to make it---whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.")

The defendant's challenge to the admission of his statements as "fruit of the poisonous tree" fails, because his seizure and subsequent arrest did not violate the Fourth Amendment. Cf. Wong Sun v. United States, 371 U.S. 471 (1963). Moreover, the evidence establishes that the defendant's statements were made voluntarily and with a full understanding of his rights to remain silent and to counsel. See Miranda v. Arizona, 384 U.S. 436 (1966).

- 3 -

Accordingly, for the reasons discussed above,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge Nannette A. Baker is sustained, adopted, and incorporated herein.

**IT IS FURTHER ORDERED** that the motions of defendant Bruce Edward Humphrey to suppress evidence and statements [Doc. ## 32 and 57] are **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 9th day of October, 2012.

Appellate Case: 13-1689     Page: 12     Date Filed: 09/09/2013 Entry ID: 4073490

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:12CR128 CEJ NAB |
| | ) | |
| BRUCE HUMPHREY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
OF MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). The defendant Bruce Humphrey was charged in an indictment with Felon in Possession of a Firearm.  Humphrey filed a Motion to Suppress Statements and Evidence [Doc. 32] on April 27, 2012. In the motion, Humphrey contends that because police officers did not have reasonable suspicion to stop and detain him, he was seized in violation of the Fourth Amendment and therefore all statements and evidence should be suppressed.

After filing the motion, Humphrey moved for new counsel and to continue the evidentiary hearing. Those motions were granted. After the continuances, the Government filed a Response to Defendant's Pretrial Motions [Doc. 47].  The evidentiary hearing was held on July 23, 2012. Following the hearing, Humphrey submitted a Supplemental Memorandum of Law Regarding His Motion to Suppress Evidence and Statements [Doc. 57] on July 31, 2012.  On August 16, 2012, the Government submitted its Response to Defendant's Supplemental Motion [Doc. 58].

1

The undersigned makes the following findings of fact and conclusions of law with regard to the suppression motions, based upon evidence adduced at the hearings, as well as a review of the transcript of the hearings, and briefs of the parties.

### FINDINGS OF FACT

Detectives Nicholas Martorano and Curtis Burgdorf of the City of St. Louis Police Department testified at the evidentiary hearing. The undersigned finds the testimony from both of the detectives credible. The detectives testified that at the time of Humphrey's arrest, they were working in the Special Operations Unit, which performs covert investigations of individuals suspected of criminal activity involving drugs or violence.

Detective Burgdorf testified that he began to investigate Humphrey following an incident on August 11, 2011. Detective Burgdorf stated that police officers responding to reports of a burglary and gunfire at a residence associated with Humphrey discovered drugs and money alongside some paperwork that appeared to belong to him. Humphrey was also a suspect in the September 2011, killing of a man named Ronnie Pleasant. The police believed that there was a "hit" out on Humphrey in retaliation for Pleasant's murder. At one point, Humphrey was arrested in connection with Pleasant's murder, but was released and not charged.

On February 29, 2012, Detective Burgdorf testified that he and his partner Detective Adam Duke were working on another assignment when they spotted a purple 1994 Lexus that they believed to be associated with Humphrey. Detective Burgdorf decided to follow the Lexus. He contacted Detective Martorano to help him with the surveillance. Detective Martorano testified that he was not assigned to the Humphrey case, and had only seen pictures of Humphrey. Operating in two separate unmarked vehicles, the detectives began to follow the Lexus one at a time while maintaining contact with each other. The detectives first followed the

2

Lexus to a school in the City of St. Louis, where they watched a child join two women in the car. They next followed the Lexus to a home on Elkins Drive in north St. Louis County, where the occupants of the car were greeted by a man who fit Humphrey's description. After watching the home for fifteen minutes, the man that Detective Martorano identified as Humphrey, left the home, entered the Lexus, and drove away.

The detectives then followed Humphrey for about twenty minutes before he arrived at the Buzz Westfall Plaza, a shopping center at the corner of West Florissant Road and Lucas and Hunt Road in St. Louis County. Detective Burgdorf followed Humphrey into the parking lot from an entrance on Lucas and Hunt Road. He watched as Humphrey parked the Lexus for less than a minute, and then drove towards the West Florissant Road side of the lot. At the same time, Detective Martorano entered the shopping center from West Florissant Road. Detective Martorano and Humphrey met at a four-way intersection near where Detective Martorano had entered. They briefly stopped directly across the intersection from each other. Detective Martorano then made a left turn into the parking lot for a bank and pulled behind the bank, pretending to be a customer. After appearing to continue forward, Humphrey made a sudden turn into the same lot, but stopped at the front of the bank. Believing that Humphrey had realized that Detective Martorano was following him, Detective Burgdorf called off the surveillance.

Detective Martorano then exited the bank parking lot and the shopping center, and began travelling westbound on West Florissant Road. Detective Burgdorf watched as Humphrey also left the parking lot and turned onto westbound West Florissant Road, several cars behind Detective Martorano. Both cars travelled in the right-hand lane on West Florissant for a short time before becoming stuck in traffic. Detective Burgdorf watched Humphrey change to the

3

empty left lane and pull forward until he was alongside Detective Martorano's car. Humphrey remained stopped there for five or ten seconds with no traffic in front of him. Detective Martorano testified that he saw movement inside the Lexus. Detective Burgdorf, following from behind, testified that he saw Humphrey raise his right arm briefly, but could not see whether there was anything in Humphrey's hand. Fearing for Detective Martorano's safety, he immediately advised Detective Martorano to pull off the road into a nearby strip mall, which Detective Martorano then entered through the east driveway. Humphrey raced ahead of the stopped traffic, made a right turn, and entered the strip mall through the west driveway. Humphrey maneuvered his Lexus into Detective Martorano's path, so that the two vehicles were nose to nose.

Detective Burgdorf followed Humphrey as he turned into the strip mall. He stopped his car behind Humphrey, boxing Humphrey in between the two unmarked police cars. He testified at the hearing that, in light of Humphrey's history and behavior, he was concerned that there would be a violent confrontation. Detective Burgdorf then turned on his police light and exited the vehicle along with his partner. They drew their weapons and verbally identified themselves as police. Humphrey rolled down his window and stuck his head partially outside. He stated that had not known that they were the police, and that he had believed that he was being followed by somebody who meant to rob or kill him. Detective Burgdorf continued to advance toward Humphrey's window. He then saw, through the partially opened window, a handgun resting on Humphrey's lap.

Detective Burgdorf ordered Humphrey out of the Lexus and brought him to the back of the Lexus, where he was, according to Detective Burgdorf's testimony, "secured." Detective Burgdorf then retrieved the firearm before informing Humphrey that he was under arrest.

4

Detective Burgdorf began to set out Humphrey's *Miranda* rights, but Humphrey interrupted, stating that he had been arrested before and knew his rights. Detective Burgdorf began to set out the *Miranda* rights a second time. Humphrey interrupted again to state that the gun did not belong to him.

## CONCLUSIONS OF LAW

In the motion to suppress, and during the evidentiary hearing, Humphrey argued that the arresting police detectives did not have a reasonable suspicion sufficient to justify an investigative stop under *Terry v. Ohio*, 391 U.S. 1 (1968), rendering the evidence seized as a result of the encounter between Humphrey and the detectives inadmissible. The government argues that Humphrey initiated the encounter, not the police. In the Response to Defendant's Supplemental Memorandum, the Government argues that Humphrey actually detained the police.

### A. Basis for *Terry* Stop

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. For the purposes of the Fourth Amendment, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person," even if a traditional arrest does not take place. *Terry v. Ohio*, 391 U.S. 1, 16 (1968). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *California v. Hodari D.*, 499 U.S. 621, 627-28 (1991) (quoting *United States v. Mendenhall*, 446 U.S. 544, 555 (1980) (opinion of Stewart, J.) (citing *Terry*, 391 U.S. at 19)). A seizure may be effectuated either by "the slightest application of physical force" or by a subject's submission to a "show of

Appellate Case: 13-1689   Page: 17   Date Filed: 09/09/2013 Entry ID: 4073490

authority." *United States v. Pratt*, 355 F.3d 1119, 1122 (8th Cir. 2004) (citing *Hodari D.*, 499 U.S. at 625, 628-29).

Here, the seizure occurred when Humphrey submitted to a show of authority. First, Detective Burgdorf used his vehicle to box in Humphrey by positioning his car behind Humphrey's, which was already blocked in front because of the position of Detective Martorano's vehicle. Next, Detective Burgdorf activated his emergency lights. Detectives Burgdorf and Duke then exited their vehicle, drew their weapons, and yelled that they were the police. These actions would have given a reasonable person the impression that he or she was not free to leave. *See United States v. Johnson*, 326 F.3d 1018, 1021-22 (8th Cir. 2003) ("Some circumstances that inform the determination of whether a seizure took place include: officers positioning themselves in a way that limits the person's freedom of movement, . . . the display of weapons by officers. . . . [and] the use of language or intonation indicating compliance is necessary.") (internal citation omitted). Humphrey submitted to this show of authority by acknowledging that Detectives Burgdorf and Duke were police officers, remaining inside his vehicle, and not attempting to flee even though Detective Martorano's car moved out of Humphrey's way.

To the extent that the Government is arguing that Humphrey's actions in confronting officers after they stopped the surveillance is an argument that the encounter began consensually, and therefore implicated no Fourth Amendment concerns until Humphrey was arrested, it fails because the circumstances indicate that it rose to the level of a seizure well before that point. *See United States v. Perez-Sosa*, 164 F.2d 1082, 1084 (8th Cir. 1998) ("A consensual encounter becomes a seizure when a reasonable person in the same circumstances would not feel free to leave.") (citing *United States v. Hathcock*, 103 F.3d 715, 718 (8th Cir. 1997)); *United States v.*

6

*Villa-Gonzalez*, 623 F.3d 526, 532 (8th Cir. 2010) (a different formulation of the same proposition).

Having established that a seizure occurred, the next question is whether it violated the Fourth Amendment. "A law enforcement officer may conduct an investigative stop of a vehicle if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Robinson*, 670 F.3d 874, 876 (8th Cir. 2012) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989), in turn quoting *Terry*, 392 U.S. at 30) (internal quotations omitted). Courts "consider the totality of the circumstances when determining whether an officer has a particularized and objective basis to suspect wrongdoing." *Id.* (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

According to Detective Burgdorf's testimony, the purpose of Humphrey's seizure was to ensure the safety of Detective Martorano and his partner. Detective Burgdorf watched Humphrey follow Detective Martorano's car into the Westfall Center parking lot, and again follow Detective Martorano's car along West Florissant. He watched Humphrey pull alongside Detective Martorano, and possibly raise his arm. He watched Humphrey pull around traffic in order to block Detective Martorano's car in the strip mall parking lot. Further, Detective Burgdorf knew that Humphrey was a convicted felon and a murder suspect. Under these circumstances, it was objectively reasonable for Detective Burgdorf to suspect that Humphrey meant to confront, and potentially harm, Detective Martorano and his partner. The seizure was therefore justified as a *Terry* stop.

### B.   The *Terry* Stop Did Not Escalate to an Arrest Before Probable Cause Was Established

While the encounter began as a *Terry* stop, it is undisputed that it ended with Humphrey's arrest. An arrest – formal or *de facto* – requires probable cause, whereas a *Terry* stop requires a

7

lesser justification, though it is limited in scope. *See United States v. Newell*, 596 F.3d 876, 879 (8th Cir. 2010).

"After making an otherwise lawful *Terry* stop, an officer may conduct an investigation 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Garcia*, 646 F.3d 1061 (8th Cir. 2011) (quoting *United States v. Banks*, 553 F.3d 1101, 1105 (8th Cir. 2009), in turn quoting *Terry*, 392 U.S. at 20). "An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Mendoza*, 677 F.3d 822, 828 (8th Cir. 2012) (quoting *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (*en banc*)). "[W]here an officer exceeds the permissible scope of *Terry*, the investigatory detention is transformed into an arrest." *United States v. Aquino*, 674 F.3d 918, 924 (8th Cir. 2012) (citing *United States v. Maltais*, 403 F.3d 550, 556 (8th Cir. 2005) and *Peterson v. City of Plymouth*, 945 F.3d 1416, 1419 (8th Cir. 1991)).

The circumstance justifying the *Terry* stop was the reasonable suspicion that Humphrey meant to do harm to Detective Burgdorf and his partner. The stop was short, and focused on neutralizing the threat that the detectives believed Humphrey posed. It did not go beyond that purpose until Humphrey's gun was discovered. Nor was the *Terry* stop transformed into an arrest by the detectives' show of force. In determining whether police conduct transforms a *Terry* stop into an arrest, a court considers the following factors:

> (1) the number of officers and police cars involved, (2) the nature of the crime and whether there is reason to believe the suspect is armed, (3) the strength of the officer's articulable, objective suspicions, (4) the need for immediate action by the officer, (5) the presence or lack of suspicious behavior or movement by the person under observation, and (6) whether there was an opportunity for the officer to have made the stop in less threatening circumstances.

*Peterson*, 945 F.2d at 1419-20 (quoting *United States v. Seelye*, 815 F.2d 48, 50 (8th Cir. 1987)) *see also Aquino*, 674 F.3d at 924 (citing *Peterson* for the factors).

Appellate Case: 13-1689   Page: 20   Date Filed: 09/09/2013 Entry ID: 4073490

Here, two detectives sought to detain a convicted felon who had maneuvered his vehicle in a way that would cause a reasonable person to fear that he meant to do harm to an undercover police officer. While they may have had a basis to stop Humphrey earlier, the detectives instead attempted to terminate their surveillance twice before Humphrey's conduct forced them to take action. In light of these circumstances, it was reasonable for Detectives Burgdorf and Duke to box in Humphrey and draw their weapons in order to prevent any harm to Detective Martorano and his partner. Drawing their weapons was also a reasonable step to protect their own safety. *See United States v. Bell*, 480 F.3d 860, 864 (8th Cir. 2007) ("During any investigative stop, 'officers may take steps reasonable necessary to protect their personal safety.'") (quoting *United States v. Shranklen*, 315 F.3d 959, 961). Therefore, the detectives did not exceed the original scope of the *Terry* stop before finding the gun.

Humphrey's gun was found in plain view. "It is settled that an officer, without a warrant, may seize an object in plain view provided the officer is lawfully in the position from which he or she views the object, the object's incriminating nature is immediately apparent, and the officer has a lawful right of access to the object." *United States v. Darr*, 661 F.3d 375, 379 (8th Cir. 2011) (quoting *United States v. Bustos-Torres*, 396 F.3d 935, 944 (8th Cir. 2005)). "Neither exigency nor inadvertence is an element of the plain view doctrine." *PPS, Inc. v. Faulkner Cnty.*, 630 F.3d 1098, 1106 (8th Cir 2011) (citing *Horton v. California*, 496 U.S. 128, 137-38 (1990)). These requirements were satisfied here. First, Detective Burgdorf acted lawfully in standing next to Humphrey's car after making a valid *Terry* stop. *See United States v. Beatty*, 170 F.3d 811, 814 (8th Cir. 1999). It was from that vantage point that he saw Humphrey's gun. Second, the incriminating character of the gun was apparent given Humphrey's prior felony conviction. Third, the discovery of a gun under these circumstances justified a limited search of

9

the vehicle in order to recover it. *See United States v. Coleman*, 148 F.3d 897, 904 (8th Cir. 1998) (citing *United States v. Richards*, 967 F.2d 1189, 1193 (8th Cir. 1992)). All three requirements of the plain view doctrine are thus satisfied. The discovery and recovery of Humphrey's gun did not violate the Fourth Amendment.

Finally, the discovery of the gun created probable cause to believe that Humphrey, a convicted felon, had committed a crime. "Probable cause exists if the facts and circumstances within the arresting officers' collective knowledge 'are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense.'" *United States v. Taylor*, 519 F.3d 832, 834 (8th Cir. 2007) (quoting *United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir. 1995)) (omission in original). Here, a known felon was found with a gun in his car. That fact alone is sufficient to create a reasonable belief that Humphrey possessed a firearm in violation of 18 U.S.C. § 922(g)(1). Because Humphrey was arrested on probable cause in a public place, the detectives were not required to obtain a warrant. *United States v. Watson*, 423 U.S. 411, 414-24 (1976). The arrest was therefore valid under the Fourth Amendment.

## CONCLUSION

The undersigned concludes that Humphrey was validly detained under *Terry v. Ohio*. By the time the *Terry* stop escalated to an arrest, there was probable cause to believe that Humphrey had committed a crime. Because the Fourth Amendment was not violated, it does not provide a basis upon which to exclude evidence obtained as a result of the encounter between Humphrey and the detectives.

**IT IS HEREBY RECOMMENDED** that the Motion to Suppress Statements and Evidence [Doc. 32, Doc. 57] be **DENIED.**

10

Appellate Case: 13-1689    Page: 22    Date Filed: 09/09/2013 Entry ID: 4073490

The parties are advised that they have fourteen (14) days in which to filed written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1). Failure to timely file objections may result in a waiver of the right to appeal questions of fact.

Dated this 11th day of September, 2012.

                /s/ Nannette A. Baker
                NANNETTE A. BAKER
                UNITED STATES MAGISTRATE JUDGE